Next case for argument is Brooke v. Simon & Partners 1829-56 and 1838-40. Mr. Brooke. Good morning, and may it please the Court. My name is Brian Brooke, and I am here representing myself today, as well as my co-plaintiff, Matthew Peed. I'm going to assume it's purely coincidental that the first case today was all about what a bad idea it is for someone to represent himself. This appeal is taken from the District Court's dismissal of our complaint against a former employer-slash-colleague of ours, because the District Court fundamentally misapplied three things. First, the Rule 12b-6 standard of review, which required that complaints allegations be accepted as true and that all reasonable inferences be drawn in our favor. Second, New York's law on quantum meroit, which precisely applies to this situation, where both Mr. Peed and I had preliminary agreements that anticipated future negotiations of terms or renegotiation in the case of Mr. Peed. You had preliminary agreements, and you were paid money under those agreements over a period of time? That's correct, Your Honor. And one of them was $150,000 base salary, correct? That was the base salary component. And that was paid? It was paid for a period of the time that I worked there. And then, and what was up in the air, very much up in the air, was bonus? It's, yes, the term we used was bonus, but it really, because of the unusual situation of me joining this firm, I wasn't just joining it as an ordinary associate looking for a job or being contacted by a firm that needed an associate. You had a case? You had a case? Yes, Your Honor. I had a case, I had a client, a client who, you know, came with me from a large law firm there, and then, when the relationship with Simon Sourd left with me as well, and continued to be my client until we finally resolved all of his matters a few months ago. So that is not a typical situation for an associate, in that, and certainly the complaint alleges that $150,000. It doesn't matter whether you're an associate, a partner, a senior, anything, the question is whether you had an agreement to be paid money for the services that you were performing, and whether that agreement was performed in whole or in part, and wasn't it? That is part of it. There was not a complete agreement. But that part of it, that part of it is so, right? I was paid part of the compensation that I was due. The issue is— Therefore, you would have a contract claim, wouldn't you, for the part of the compensation that you were due that you were not paid? I think that's true only— Why do you think that's a matter of— Because the problem is that the, in terms of the ultimate share of the acuity matter revenue, what was agreed was that it should be fair. And I considered, certainly, that this could be a contract claim, but fair is such a vague term, and I believe there is case law out there that says that that is not an enforceable term, because how can you show what the parties reasonably meant that to be? What was the total that you were paid? The total that I was paid was slightly over $300,000. And that was over what period of time, or for what period of time? That covered work over a period of time from mid-July of 2011 through— I'm trying to do the exact math here, because it left— I'd say about April 2012. But it didn't cover— What's important is that there was a huge amount of money that was paid by the client after that period of time, where no portion of that was shared with me. And that's the thing, is that there was never an agreement on— So at a certain point, you were getting 100 percent of what your—of your personal billings contributed to the bill to the client. That was only for the bills that were issued for time after February 15, 2011. So right after I had a 400-hour month, Simon unilaterally said, I want to change these terms, and I want to stop paying you a base salary, and I want you to— In terms of what? Change the—well, change the fact that I was receiving a base salary. That's what he said. I want to take it off base salary. In terms of your understanding. Well, I misspoke in terms of saying change the terms. It changed that term, the base salary term. The problem was, and this is what I said in response is— That was a term. If it's a term, it's a term of a contract. It is a term, but it's not the complete term. Because the complaint— It's a term of a contract. Yes, there's no doubt there's a term of an agreement. Whether that agreement is valid and enforceable, though, is the question here. And I think that's where the district court got tripped up, is the fact that there was a preliminary agreement that I was going to show up to work, but we were going to leave it for another day to decide what percentage exactly I get of the revenue because there were so many questions up in the air. The bills weren't being paid by Mr. Cutie. They were being paid by his former employer, who he happened to be suing in arbitration and who had been the one responsible for causing him to be prosecuted. The reason it was up in the air is because Mr. Simon said in a rather, I guess, high-handed way, I'll decide. That's not true. He did not say I'll decide. It could be 10 percent. It could be 50 percent at some point, correct? He used the terms— It could be 10 percent. It could be 50 percent. I'll decide what it is. He did not say I'll decide what it is. That's what's important. I know, but Mr. Brook, I understand in your amended complaint you made it clear that your position is that the executive matter bonus was nondiscretionary, that it was going to be fixed at a later time and it was never done. But in your initial complaint, the district court focused on paragraph 35, which I think Judge Jacob is referencing, where you say that Simon would calculate the amount that he thought was fair and distribute it to Brook with his next paycheck, and if Brook then believed the amount was unfair, he should discuss fixing it with Simon. So that type of language is discretionary type language. That's not nondiscretionary language you would use if you were claiming. So the district court focused on that and said this is discretionary. Your amended complaint changed that, but that's what you said the first time. The problem with that, Your Honor, is that that ignores the context of the paragraphs all around that. For example, the term fix, that's not the first place that the term fix appears. It also appears in paragraph 26 of A13, where when discussing salary before that date, Simon agreed that Brook would receive origination credit for bringing in the executive matter. Would receive. Why didn't you just say it was nondiscretionary the first time? Why didn't you just say it was a nondiscretionary bonus? It was going to be fixed. We didn't fix it at that time because we didn't know how much they were going to pay out. Why didn't you just say that? I didn't use the word ñ well, my lawyer who filed this, I was not pro se below. Didn't use the word nondiscretionary here. I think because it was understood that that was clear from implication, not only in paragraph 26 where it refers to not deciding the percentage at that time. He didn't say I'll decide it later. He said let's decide this later. And so in addition, paragraph 32, where it refers to here are the terms that he offered on the date that I accepted it, one of which was a base salary, which he described as artificially low, and elsewhere in the complaint that refers to the fact that that's because it was seen as essentially a draw against what would be an amount proportional to my own billings. But in addition, it says not only would I get the base salary, but that there would be periodic bonuses based on revenue generated from the executive matter and proportionate to Brooks' own billings plus an unspecified percentage of origination credit for other attorneys' billings. Then, in addition, Simon said that he would pay discretionary bonuses for Brooks' work on other firm matters, just as he did for everyone else in the firm. So the implication was meant there. And if this was certainly a statute you were applying, statutory construction, or this was a contract, the omission of the term discretionary from the line before it would have significance, because when a bonus is discretionary, the complaint says it's discretionary. So it only said that applied as to work on other matters. And it's important to keep in mind that the options here were to go either to essentially start my own firm, collect my full hourly rate, or otherwise go, you know, and join Simon. And Simon was assuring me that it was a more financially beneficial plan to join with him. So I would like to briefly address my partner, Matt Speed's claims, because I think his claims make it absolutely clear the district court's fundamental errors in a very simple way. I'm not sure you're able to appear pro se on behalf of someone other than yourself. Well, I am a licensed attorney and a member of the bar of this Court, Your Honor. You're appearing for him. I'm appearing for him, yes, and I indicated that on the briefs. You are out of time, but why don't you take a moment to mention Mr. Speed's claim, because they're also briefed. Yes. It is hard to imagine a universe in which it is not a sufficient allegation of the reasonable value of someone's services when the complaint alleges that the person worked a certain number of hours, that there was a specific hourly rate that was billed to and paid by a third party. That fits squarely within the realm of what is considered to be the preferred way to calculate quantum merit damages. And the district court just actually, in its original opinion, disregarded all of those allegations and said there was nothing in there. And that shows both that the district court was not applying the Rule 12b-6 standard faithfully to the complaint. It was picking and choosing bits and pieces and not the whole, and it was not applying the law of quantum merit correctly at that time. Very good. Thank you. Thank you. We'll hear from Mr. Murphy. May it please the Court. Good morning, Your Honors. I'm Kenneth Murphy for Mr. Simon and Simon and Partners. Your Honors, this case, in preparing for it yesterday and looking over the briefs, refreshing my recollection, reminded me of the old adage, if it walks like a duck and it quacks like a duck, you can't call it a chicken. The complaint itself lays out an oral agreement to be an at-will employee with discretionary bonuses at the discretion of the employer. Now, the employee may not have been happy about that and may have hoped subjectively that at some point in time that employer would have agreed to some set measure. Let me just ask you to take a step back. Sure. Let's make sure we agree on the law. If there was a component of his salary that was supposed to be nondiscretionary, okay, but was not set, was a nondiscretionary component but was not set, whether he's an at-will employee or not, he would potentially have a claim here. This case law suggests if you're not ‑‑ there would be no agreement then of a material term, right, no contract, correct? Correct. All right. And then whether he's an at-will employee or not, we've said that you would have a potential claim there, right? I don't disagree with you, Judge. Okay. My point is this. Let's take his first amended complaint. Let's put aside his original complaint. At the oral argument, he said over and over to the district court, this was a nondiscretionary component. Whatever ambiguity there might have been in the original complaint, he said, I want to replead to make clear this is nondiscretionary. And the district court just dismissed the case, didn't say anything in the opinion about why he wouldn't have a chance to replead it to make clear it was nondiscretionary. So why wouldn't his first amended complaint be an actionable quantum merit claim? It goes back to what I just said. Just because he calls it nondiscretionary doesn't make it nondiscretionary. You've gotten an employer and an employee relationship. He accepted bonuses in September, October, December that were up and down. I just wanted to say it's nondiscretionary. He explains the whole situation. He says the discretionary part was the same that the other lawyers were getting. The nondiscretionary part was the matter he brought in. And they didn't set it initially because they didn't know how much was going to be paid out by the client. So they left that open. And he said his base salary was a draw against the nondiscretionary bonus. So there's a lot of details about why he believed, based upon their discussions, that this was a nondiscretionary fixed number that was going to be agreed upon. I would argue, Your Honor, that the conduct thereafter, that conversation was June 20th of 2011. The conduct thereafter and the conduct that he participated in, working, continuing to work, accepting the bonuses regularly, some that went up, some that went down, some that he was happy with, some that he complained about. And the course of conduct therein and his substantial performance affirmed that the contract. That's a motion to dismiss issue, that we're going to make that. He says in the complaint that he was continuing to try to negotiate it, making a counterproposal. So why wouldn't we have discovery play it out to see what those interactions were over time? His wishful thinking and his efforts to renegotiate do not a nondiscretionary bonus make, is what I would submit to Your Honor. What he's saying is essentially, in any context, in any employment agreement in New York, if the employee goes back and says, I wanted more, you said I could have more, I want to talk about it, and the employer says, well, I'll hear you on it, and maybe I'll give you more here and maybe I'll give you more there. This isn't the ordinary case. He says there was a specific reason it was kept open, because they had to wait to see how much the client was going to pay. This wasn't just a normal situation where you're going to have a base hourly and a bonus. This was the matter he was bringing in that the bonus percentage was to be kept open to see how much it was worth. Right. So this is not an ordinary case, right? I would submit that it's an ordinary case like any other employee who brings in a customer, whether it's a law firm or a sales or a plumbing company where somebody picks up a potential customer. It's an ordinary case in that regard. It's very normal for employees to be remunerated or rewarded for bringing in business, and that's essentially what this was. That cites a case in the first department, Kaplan, that says ordinarily the question of whether unpaid compensation constitutes a discretionary bonus or a non-forfeitable earned wage is a question of fact. But what you see, I think you see in those cases, Your Honor, is that's in instances where employees don't get any bonus at all. Not true. No. The case that that cites is a case that was reversed on summary judgment where there was a fixed salary and a bonus. So a person got a fixed salary, didn't get a bonus, and they said that that portion. Right. The bonus portion was actionable, at least for a motion to dismiss. Right. Whether it was discretionary or not. In that case, Your Honor, it was the bonus was not paid at all. That's my point. Those cases hold for the principle that when you have the right to a discretionary bonus and the employer gives you no discretionary bonus and gives you no analysis of how they came to the conclusion on whether to give you that bonus or not, then it falls into the bucket of compensation. And for that reason, it cannot be dismissed on summary judgment, on a motion to dismiss. What do you have for that proposition that if you accept any bonus while you're trying to negotiate a term that you're out of luck? You can't argue that there was never a contract. If you accept any money. The law in New York is very clear that an at-will employee who gets a discretionary bonus cannot sue for unjust enrichment or quantum merit for that unjust enrichment, for that bonus. No, but you're claiming something broader than that. I understand that. You're saying that once you accept some portion of the salary, you can't argue that it was non-discretionary, that his argument is it was non-discretionary. You're saying, no, if it was non-discretionary, you wouldn't have taken any money from a bonus. I don't know that that necessarily follows as a matter of law. I would go then to the case, I think it's Bessemer Trust, which we cited in our papers. And I go back to that. General, this Court has said, look, you can hire someone as an at-will employee. You can terminate them at any time. By the same token, you can change the terms of their employment at any time. So I think this Court on that basis alone could dismiss this complaint based upon the fact that over the course of several months, Mr. Brook accepted those payments, maybe not happy with it, but he took the money, he accepted the money. One point I want to make is it was $295,000 in bonuses he was offered for seven months of work. In addition, it was $87,000 in salary. So the sum total would have been just shy of $390,000 for seven months of work if he had accepted the last $75,000 bonus, which he was in agreement. He cites, and I know this is a small portion of the money, but just for purposes of the analysis, there was weeks before the agreement, quote, unquote, agreement was reached, that he says he never got paid for. The agreement was reached in June 20th. Right. But he started working on the matter prior to that, and he said he never got paid any money. So why wouldn't that be actionable? I suppose on that simple basis for that period of time, he could have brought a single isolated claim. I can assure you there's nothing in the record to say that he ever asked the employer, please pay me. He was a lawyer responsible. How about at the end then, too? He says at the end there was a lot of money the client paid at the very end that he did not get at all. The record is very clear. Dollar for dollar from February onward, he got every penny. And then the last payment for work he had done, payment for work while he was the associate at the firm, he was offered $75,000. He refused it. He keeps saying I was never given anything from the last $500,000. The employer said to him, I will give you a $75,000 bonus even though you took the client and you're gone and you've left and we no longer have the work. Yeah, well, I mean, that would be reasonably so, I think, from an employer, for the purpose that here we are eight years later in a lawsuit over this thing. I don't think it was anything unconscionable or improper for the employer to say, I will give you a $75,000 discretionary bonus if you sign a release. And he refused to sign it. Can you just address Mr. Peed for a moment? Mr. Peed, I think that there has to be a reasonable expectation on the quantum Merowith front. And I think this is what Judge Daniels' opinion said, and I think it makes sense. Mr. Peed was paid $125 per hour for every hour that he worked. He wanted to be paid $450 per hour, or that's what his pleadings state. $450 per hour is what the employer was paid. He was a contract attorney. It's not reasonable to expect that you'll get every dollar that is paid for your work by the client directly to the contract attorney, contract employee. His unjust enrichment or quantum Merowith claim fails. It was an agreement. You didn't even argue to the district court that that element was not properly put in, right? That was sua sponte done by the district court, right? I don't recall specifically, Your Honor. I do believe that we argued that he did not have a reasonable expectation of that payment. Is there any case that you could cite, any New York State case, a federal case interpreting New York law where someone gave a dollar amount for what they're pleading? This is what I'm worth. Here's a number of my hourly rate and lost on a motion to dismiss. You just cited the Silva case, which is actually my case as a district court judge, where there was no number. I think one of those cases you cite is when someone just says I want the reasonable value of my services and doesn't quantify it. Any case you have that quantifies it and said case over? I cannot stand here today and quote a case for you or cite a case in that regard, Your Honor. What I would say is to plead a case that says I'm entitled to $450 an hour is an unreasonable expectation and does not plead a case for quantum Merowith on Justin Richmond. I know, but he was not, there was no overhead with respect to him, right? You weren't paying his benefits or anything like that, right? Correct. So he's saying this is what the third party paid you for my services. I don't understand why from a pleading standpoint that a case shouldn't go forward. What other number would he be able to set it at? This is what a third party has actually paid for his services. I just think that that's an unreasonable estimation for a contract attorney who is being paid $125 an hour. The Second Circuit had a case called Longo that was cited in the papers where someone who was an independent consultant wanted the employer to pay what she would have gotten as an independent consultant. And the case was reversed on summary judgment where the Second Circuit in a footnote said it's not reasonable that she would get what she gets as an independent consultant because, you know, there's overhead. Now she's an employee. But they didn't say case over. That was something that had to be worked out. What deduction should be made where there, there was overhead. Here there was no overhead. So I don't understand how you could distinguish the Longo case from this one. I still would submit to the Court that there has to be some expectation of a number. We didn't see a number from Mr. Peed. The amount and the value of that, of his services, he was fairly remunerated for. The contract was perhaps I will revisit it. Maybe I'll pay you more. Mr. Simon met his obligation to pay the $125. There was an agreement to agree. He didn't have to pay more in the future. And for that reason, I submit that the Peed claim should stand. My time is up. I appreciate your honors. Thank you very much. Mr. Brook, you have two minutes of rebuttal. What this really comes down to, at least as to my claims, is the standard of review and whether I am entitled to the reasonable inferences from the complaint as to the original complaint. On that one, it did not say the express words, this component is non-discretionary. But it is certainly implied again and again. And there is, and there are a few statements in there which were what happened to make it into the complaint when trying to support a fraud claim, which we're not pursuing on appeal, that when focused on in isolation could go the other way. But that doesn't mean. What element would be non-discretionary? To say that you expected something is one thing, but all you've said is you expected a fair amount. And fairness is in the eye of, I suppose, both the beholder, the payor and the payee. But it does suggest some discretion in setting an amount, doesn't it? It does. But that discretion belongs to both parties because it also alleges that the two of us, Simon and I, would together have that discussion. In the complaint, it says that Simon, in fact, when I proposed. What about it was non-discretionary, though? I mean, you're both negotiating, even in your telling of the circumstance. All that was non-discretionary was that there would be a bonus payment. Yes. So that's right. The only thing that was agreed on is that there would be a bonus payment. And as mentioned before, there was a two-month period when I happened to bill the most hours where once the money was actually received from Duane Reade, no bonus payment was made without the added requirement of a release, which is essentially trying to negotiate a contract and not trying to perform on an existing contract if there was one. But in terms of, you know, it's understandable how the good district court could think that there was discretion where there isn't an agreement. Whenever there's parties that have an agreement to agree, they aren't going to be able to compel the other to actually agree. There was no way to force Simon to agree to something. That's why these contracts are unenforceable. A, he has the discretion to agree or not. But if parties have an agreement to agree, as we did, where the only thing we agreed on is that it should be fair, and obviously despite it seeming like we were on the same page at the beginning, we weren't at all, then in that case, that's where quantum merit steps in, where the district's — From the factor that Dwayne Reed was paying and that they had charged your client with being a faithless employee so that there would be some question as to whether they would actually pay your bill? That was certainly a part of it, and in fact, I think, although parts of the arbitration that followed the criminal proceedings are confidential, there was enough filed in other courts for me to be able to say that they certainly did seek to recover the entirety of the attorney's fees from him later and there were disputes over when they should stop payment. Payments were slow. Payments were oftentimes negotiated, and that was something that even though I had been an associate at Greenberg Trowering, I was very familiar with. And in fact, there had been prior appellate counsel retained that withdrew because Dwayne Reed wasn't paying them. And so this was a situation. I see that my time has expired. Thank you. Thank you very much. We'll take the matter under advisement.